UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES T. THEISS,<br><br>                Plaintiff,<br><br>    v.<br><br>COUNTY OF SNOHOMISH, et al.,<br><br>                Defendants. | Case No. C12-1880-BAT<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

      Plaintiff James T. Thiess has brought a 42 U.S.C. § 1983 action alleging that on October 2, 2009, defendants violated his constitutional rights and committed state torts against him when he was apprehended by a K-9 police team. Dkt. 1 at 6. Defendants Snohomish County, Adam Fortney, and Jane Doe Fortney move for summary judgment. Dkt. 11. In his response, Mr. Theiss concedes that he cannot establish municipal liability against Snohomish County under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), that his claims for intentional torts are barred by Washington State's two-year statute of limitations for such claims, and that he does not claim false arrest or a violation of the Washington State Constitution. Dkt. 22 at 7. Accordingly, the Court **GRANTS** defendants' motion for summary judgment with respect to these claims.

      Mr. Theiss contends, however, that the Court should not grant summary judgment on his constitutional claims against defendant Adam Fortney and the state-law negligence claims

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

against all defendants, because there are genuine issues of material fact as to Deputy Fortney's use of his K-9 dog in apprehending Mr. Theiss. *Id.* As discussed below, the Court **GRANTS** defendants' motion with respect to Mr. Theiss's Fourteenth Amendment due process and equal protection claims and negligent infliction of emotional distress claims, but **DENIES** the motion with respect to Mr. Theiss's Fourth Amendment unlawful seizure claim.

## BACKGROUND

**A.     Burglary and search for Mr. Theiss**

The parties do not dispute the basic facts leading up to Mr. Theiss's apprehension. Dkt. 24 at 1. On the evening of October 2, 2009, Mr. Theiss entered an open garage attached to a residence in Monroe, Washington. *Id.* The homeowner returned to the house and confronted Mr. Theiss, who took off running. *Id.* The homeowner chased Mr. Theiss and tackled him, but Mr. Theiss was able to get away and drove off in his car. *Id.* at 2. A neighbor called 911 and gave a description of Mr. Theiss's car and a partial license plate number, which dispatchers sent out to police. Dkt. 18 at 3.

About a half hour later, City of Snohomish Police Officer Steven Sabourin began following a car that matched the description of the car from the 911 call, which was in fact Mr. Theiss's car. *Id.* Officer Sabourin followed the car onto a dead-end street, where the car stopped and Mr. Theiss got out and ran into the yard of a nearby home.[1] *Id.* The house had a large yard and was surrounded by trees and fields. Dkt. 16 at 4. Mr. Theiss ran around the house and went under a deck. Dkt. 24 at 3.

Moments later, City of Snohomish Police Officer Christopher Mitteer and his K-9

---

[1] Mr. Theiss avers that he got out with his hands up and ran when Officer Sabourin yelled, "Stay right there, I've got the K-9." Dkt. 24 at 3. Officer Sabourin avers that Mr. Theiss ran as soon as he exited the car. Dkt. 18 at 3.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

1  partner, Kizar, arrived and began searching for Mr. Theiss. Dkt. 16 at 4-5. Officer Mitteer gave
2  K-9 warning announcements, but received no response. *Id.* at 5. Mr. Theiss heard a dog sniffing
3  near his hiding spot under the deck, but the dog left after a moment and the officer followed it.
4  Dkt. 24 at 3-4. After the dog and officer left, Mr. Theiss crawled farther under the deck, where
5  he found an entrance to a crawlspace under the house. *Id.* at 4. Mr. Theiss entered the
6  crawlspace and lay on his back partially covered by a tarp with some insulation hanging down
7  from above. *Id.*

8  After searching for about 45 minutes with no success, Officer Mitteer requested
9  Snohomish County Sheriff's Deputy Adam Fortney and his K-9 partner, Bruno, to come relieve
10  Officer Mitteer and Kizar. Dkt. 16 at 5-6. Deputy Fortney had been monitoring the tracking
11  effort via radio, and knew that Mr. Theiss was suspected of burglary and was also a registered
12  sex offender. Dkt. 12 at 5. He and Bruno arrived on the scene, where Officer Mitteer told
13  Deputy Fortney that Kizar would not track out of the home's yard but could not locate the
14  suspect. *Id.*

15  Deputy Fortney and Bruno began tracking Mr. Theiss. *Id.* at 6. Deputy Fortney gave K-
16  9 warning announcements, but received no response. *Id.* at 7. After searching the perimeter of
17  the property, Bruno also gave no indication that Mr. Theiss had left the area of the house where
18  Officer Sabourin last saw him. *Id.* Mr. Theiss could hear the officers talking during the search
19  but did not come out. Dkt. 24 at 4.

20  **B.    Deputy Fortney and Bruno apprehend Mr. Theiss**

21  *1.    Defendants' alleged facts*

22  Defendants describe Bruno's apprehension of Mr. Theiss as follows. Deputy Fortney
23  eventually brought Bruno back to the house. Dkt. 12 at 8. He allowed Bruno to go under the

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

deck and followed him under. *Id.* Deputy Fortney saw Bruno go into the entrance to the crawlspace, which Deputy Fortney had not seen until he was under the deck. *Id.* Deputy Fortney recalled Bruno, who came out of the crawlspace on command. *Id.* Deputy Fortney then looked in the crawlspace opening and was able to observe about 80 percent of the area. *Id.* He could not see the entire crawlspace, did not know if the suspect was in the crawlspace, and did not know if the suspect was armed, and was thus apprehensive about his safety. *Id.* Deputy Fortney gave two more K-9 warning announcements, but heard no sound coming from the crawlspace. *Id.*

Deputy Fortney then allowed Bruno to search the crawlspace again. *Id.* Bruno ran around the perimeter of the crawlspace to a piece of insulation in a far corner, circled back to it a second time and bit at it, then moved on and ran around the crawlspace again. *Id.* Deputy Fortney recalled Bruno and gave another K-9 warning announcement, stating, "Hey, we are checking this crawlspace with a dog, if you are in here give up or you might be bit." *Id.* at 9. When Deputy Fortney released Bruno again, Bruno went directly to the insulation and bit it again, this time biting Mr. Theiss. *Id.* Deputy Fortney heard that Bruno had seized Mr. Theiss and so moved closer and told Mr. Theiss to show his hands. *Id.* Mr. Theiss kept repeating "I'm done, I'm done." *Id.* Once Mr. Theiss showed his hands, Deputy Fortney commanded Bruno to let go, which he did immediately. *Id.* Deputy Fortney then detained Mr. Theiss. *Id.*

Officer Mitteer came under the house to assist in detaining Mr. Theiss. Dkt. 16 at 7. When Officer Mitteer arrived, the only part of Mr. Theiss that was visible was his head. *Id.* He heard Mr. Theiss say, "I deserved what I got, I am really sorry you guys." *Id.* When Officer Mitteer asked Mr. Theiss if he knew they were the police and if he knew a police dog was looking for him, plaintiff responded in the affirmative to both questions. *Id.* Mr. Theiss stated

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

1 that he did not give himself up after hearing the K-9 warnings because he was scared and thought
2 the officers might not find him under the house. *Id.* at 7-8.

3       2.      *Plaintiff's alleged facts*

4       Mr. Theiss describes his apprehension as follows.  After he had been hiding in the
5 crawlspace for a while, he heard someone suggest that he may be underneath the house.  Dkt. 24
6 at 4.  He then heard something in the far corner of the crawlspace, coming from a different
7 entrance than the one he had used, and someone said, "This is the police department, we're
8 sending the dog in." *Id.*  Mr. Theiss heard the dog panting and sniffing around the crawlspace
9 for a short while before it found him and nipped him on his left knee, then moved to his right
10 side, by his face. *Id.*  Mr. Theiss could see officers behind the dog. *Id.*  The officers shined a
11 flashlight on Mr. Theiss and one officer said, "Don't even move motherfucker.  Let me see your
12 hands slowly." *Id.*  Mr. Theiss slowly brought his hands up. *Id.*  He then heard an officer say
13 something like "take him," or "sic him," and the dog bit him first on the right side of his face and
14 neck, and then, as he turned away, on his shoulder, leaving gashes where it bit. *Id.*  The officers
15 then handcuffed him and led him out of the crawlspace. *Id.*

16 **C.**     **Arrest and prosecution**

17       Monroe Police Officer Scott Kornish arrested and took custody of Mr. Theiss.  Dkt. 15 at
18 3.  Mr. Theiss was taken to the hospital for treatment of his wounds, where he received 47
19 stitches, and then to the Monroe police station. *Id.* at 4; Dkt. 24 at 5.  Mr. Theiss was charged
20 with and pled guilty to one count of residential burglary stemming from the incident at the
21 garage.  Dkt. 17, ex. A.

22 ///

23 ///

## DISCUSSION

**A.     Summary judgment standard**

Summary judgment should be granted when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*.  When applying these standards, the Court must draw all reasonable inferences in favor of the non-moving party.  *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006).

The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial.  *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir. 2001).  If the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248.  The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact, and thereby entitling the moving party to the summary judgment it sought. *Celotex Corp.*, 477 U.S. at 323.  However, if there are "any genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party," then summary judgment may not be granted. *Anderson*, 477 U.S. at 250.

**B.      Constitutional claims**

Mr. Theiss's constitutional claims are brought under 42 U.S.C. § 1983. In order to sustain a § 1983 claim, Mr. Theiss must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

*1.       Equal protection*

Mr. Theiss claims that defendants violated his rights to equal protection. Dkt. 1 at 9-10. Defendants argue that he has not established an equal protection claim because he has not shown that he was treated differently from others similarly situated. Dkt. 11 at 13. Mr. Theiss does not respond to this argument.

In order to establish a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Mr. Theiss does not allege that he is a member of any protected class. However, a "class of one" may state an equal protection claim where the plaintiff alleges that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Mr. Theiss does not allege that he was treated any differently from any other similarly situated suspect being tracked by a K-9 unit. Summary judgment on plaintiff's equal protection claim is therefore **GRANTED**.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7

*2.     Due process*

Mr. Theiss claims that defendants violated his rights to procedural and substantive due process. Dkt. 1 at 9-10. Defendants argue that he has not adequately pled due process claims and cannot establish a due process violation. Dkt. 11 at 14-15. Mr. Theiss does not respond to this argument.

A substantive due process claim is not appropriate where a specific Amendment provides explicit protection against a particular type of government behavior. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* (emphasis in original); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998) (holding that a substantive due process analysis applies where the injured party was not "seized"). Because Mr. Theiss was "seized" within the meaning of the Fourth Amendment, that provision covers his claims and he cannot assert a substantive due process claim.

A procedural due process claim, on the other hand, is not necessarily precluded by the fact that a Fourth Amendment claim is available. *See Sanders v. City of San Diego*, 93 F.3d 1423, 1428 (9th Cir. 1996). However, there is likely little functional difference between analyzing a procedural due process claim under the Fourth Amendment and analyzing it under the Fourteenth Amendment because, in the context of a criminal investigation or proceeding, "the two standards are often identical, such that compliance with the Fourth Amendment also serves to comply with procedural due process." *Id.* In other words, the Fourth Amendment "defines the 'process that is due' for seizures of persons or property in criminal cases." *Gerstein*

*v. Pugh*, 420 U.S. 103, 125 n. 7 (1975).

Moreover, a procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) denial of adequate procedural protections. *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). Mr. Theiss alleges that he was deprived of his constitutionally protected liberty interests in life, personal security, bodily integrity, and travel. Dkt. 1 at 10. But he has identified no procedural protections he was constitutionally entitled to, but denied, that could form the basis for a procedural due process claim. Summary judgment on plaintiff's due process claims is therefore **GRANTED**.

       3.      *Unlawful seizure and excessive force*

          a.      *Whether Mr. Theiss stated a claim*

Defendants assert that Mr. Theiss did not plead any violation of his Fourth Amendment rights, including excessive force and unlawful seizure, in his complaint. Dkt. 11 at 15 n.7, Dkt. 26 at 2. They argue that Mr. Theiss did not include a short and plain statement of such a claim. Dkt. 26 at 2.

A pleading that contains a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement serves to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To give defendants "fair notice" of the claim, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A complaint can give fair notice of a claim even without citing to a particular source of law, provided that the factual allegations establish a plausible entitlement to relief. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008). Thus, the crux of the matter is whether the complaint

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9

contains "*claims for relief*, not causes of action, statutes, or legal theories." *Id.* (emphasis in original).

Mr. Theiss's complaint is inartfully drafted and does not identify the Fourth Amendment as the source of his claims. It does, however, point more generally to constitutional claims for deprivation of his "liberty interests in life, personal security, bodily integrity, [and] travel . . . ." Dkt. 1 at 10. In addition, and more importantly, it contains the following factual allegations: "Plaintiff was under the house and when Bruno tracked plaintiff, he gave up. After plaintiff gave himself up to be arrested, Fortney ordered Bruno to attack plaintiff, causing serious bodily injury to plaintiff." Dkt. 1 at 8. These factual allegations clearly indicate that Mr. Theiss's claims relate to the use of force in seizing him. The allegation that Deputy Fortney ordered Bruno to attack Mr. Theiss after Mr. Theiss gave up creates a plausible right to relief in an excessive force claim. Mr. Theiss's complaint is sufficient to give defendants fair notice of a claim for relief under the Fourth Amendment, despite not identifying that Amendment as the source of the claim.

         b.      *Deputy Fortney's use of force*

Turning to the merits, defendants argue that Mr. Theiss cannot establish an unlawful seizure claim because the use of force was during the seizure was reasonable. Dkt. 26 at 2.

The Fourth Amendment governs both the lawfulness of a seizure and the means used to accomplish it. *See Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985). In determining whether the force used to effect a seizure was reasonable under the Fourth Amendment, the court must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The court must first assess the "quantum of force" used against the plaintiff, and then assess the governmental interests. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007). The

factors used to assess the governmental interests include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. These factors are not exclusive, and the court may consider any factor relevant to the reasonableness inquiry. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011).

The reasonableness of a seizure is judged based on the particular facts and circumstances of the case, and from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight. *Graham*, 490 U.S. at 396. The officer's actions must be objectively reasonable in light of the facts and circumstances confronting him. *Id.* at 397. The court must consider the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

Defendants argue that the nature of the intrusion, a dog bite, was outweighed by the governmental interests in apprehending Mr. Theiss. Dkt. 26 at 3-4. They point out that Mr. Theiss was suspected of burglary, a felony, and Deputy Fortney knew that Mr. Thiess was a registered sex offender. *Id.* at 4. The officers did not know whether Mr. Theiss was armed, but Deputy Fortney was confronting him in a crawlspace with limited mobility and visibility, and he felt apprehensive for his own safety. *Id.* And Mr. Thiess had actively resisted arrest by fleeing from Officer Mitteer and hiding from the officers searching for him for several hours. *Id.* Defendants further assert that Mr. Theiss did not give up before Bruno contacted him and, even in his version of events, only started to raise his hands after Bruno had already located and nipped him. Dkt. 26 at 5.

But the Court must examine the facts in the light most favorable to Mr. Theiss. First, Mr.

Theiss alleges that the use of K-9 Bruno was a significant use of force. He received gashes down the side of his face and shoulder, requiring 47 stitches. These facts support a finding that the use of force was greater than a mere dog bite, and a serious, even if not deadly, use of force.

Next, with respect to the first *Graham* factor, Mr. Theiss points out that although burglary is a felony, there were no allegations of a weapon or any use of force in the commission of the burglary. Dkt. 22 at 10. Each time Mr. Theiss was confronted, first by the homeowner and second by Officer Mitteer, he fled rather than using force. These facts weigh against a finding that the crime at issue was as severe as a violent crime.

The second *Graham* factor is the most important. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011). Mr. Theiss argues that there was no evidence he posed any immediate threat to the officers or others, that the mere fact that a fleeing suspect is a registered a sex offender does not mean that he posed a threat to anyone, and that at the time Deputy Fortney confronted Mr. Theiss in the crawlspace, Mr. Theiss was on the ground and was not a threat to anyone. Dkt. 22 at 11.

As previously noted, there was no allegation of use of a weapon in the burglary. Mr. Theiss had not displayed a weapon or indicated in any manner that he was armed. And he fled when confronted by Officer Mitteer, rather than respond with force or a threat of force. Although Deputy Fortney was in a compromised position when he confronted Mr. Theiss in the crawlspace, Mr. Theiss was equally compromised in his mobility and ability to see what was happening around him and, consequently, his ability to threaten or harm Deputy Fortney. Although he remained hidden when Deputy Fortney warned that a police dog was searching the crawlspace, Mr. Theiss did not respond to the warnings with threatening words or actions. And, most importantly, Mr. Theiss alleges that he had complied with Deputy Fortney's order to slowly

raise his hands before the deputy directed Bruno to "take him." From these facts, a jury could conclude that Mr. Theiss was not an immediate threat to Deputy Fortney at the moment the deputy used force by directing Bruno to attack Mr. Thiess.

With respect to the third *Graham* factor, Mr. Thiess concedes that he had previously attempted to resist arrest, but argues that, at the time Deputy Fortney directed Bruno to "take him," he had surrendered, was obeying the deputy's command, and was no longer actively resisting arrest or trying to flee. Dkt.22 at 11. Mr. Thiess alleges that Bruno first nipped his left knee, before Deputy Fortney was aware of his presence. Deputy Fortney then told him not to move and to put his hands up slowly. It was as Mr. Thiess complied with this direction that Deputy Fortney directed Bruno to "take him," and Bruno began biting Mr. Theiss. Defendants point to the fact that Mr. Theiss raised his hands in surrender after Bruno nipped his knee to support a conclusion that the use of force did not occur after Mr. Theiss had surrendered. Dkt. 26 at 5. But the nip to the knee is not the force Mr. Theiss complains about. And Deputy Fortney was not aware that Mr. Theiss was in the crawlspace until after Bruno nipped his knee. Deputy Fortney did not deploy the allegedly excessive force—the bites to the face and shoulder—until after Mr. Thiess was complying with his command. These facts, taken in the light most favorable to Mr. Thiess, show that he had surrendered and was obeying Deputy Fortney's command before Deputy Fortney applied the allegedly excessive force. Based on these facts, a jury could reasonably find that Deputy Fortney used excessive force after Mr. Theiss had surrendered and was following police commands.

Based on these various considerations, the Court cannot grant summary judgment on Mr. Theiss's excessive force claim. Although the Court recognizes that the defendants' version of the facts supports a finding that the use of force was reasonable, a jury considering the facts

could also reasonably come to the opposite conclusion—that Deputy Fortney's use of Bruno to apprehend Mr. Theiss was an excessive use of force.  As the Ninth Circuit has noted, summary judgment in excessive force cases should be granted sparingly because such cases "almost always" turn on disputed facts and a jury's credibility determinations.  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).  The Court concludes that that is the case here.

       c.  *Qualified Immunity*

Defendants assert that Deputy Fortney is entitled to qualified immunity because his actions were objectively reasonable given the law and the facts known to him at the time and he did not knowingly violate the law or act in an incompetent manner with his K-9.  Dkt. 11 at 23.

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This is a two-part inquiry.  First, the court must determine if the facts, taken in the light most favorable to the party asserting the injury, show that officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  The Court has already determined that the facts as alleged by Mr. Theiss show that Deputy Forney violated his right to be free from unlawful seizure.

Next, the Court must determine whether this right was clearly established.  *Id.*  The court must consider the specific context of the case, not a broad general proposition.  Thus, the question is not whether the Fourth Amendment prohibits the use of excessive force in effectuating a seizure, of which there can be no doubt.  Rather, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14

1  "This does not mean that any official action is protected by qualified immunity unless the very
2  action in question has previously been held unlawful, but it does require that in the light of pre-
3  existing law the unlawfulness must be apparent." *Mendoza v. Block*, 27 F.3d 1357, 1361 (9th
4  Cir.1994) (internal citations and quotations omitted).

5  The Ninth Circuit has held that the use of a police dog is subject to excessive force
6  analysis, and, analogizing to other types of force, that this law is clearly established for purposes
7  of determining qualified immunity. *Mendoza*, 27 F.3d at 1362. The court noted that "no
8  particularized case law is necessary for a deputy to know that excessive force has been used
9  when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is
10 completely under control." *Id.* The court has also held that "it was clearly established that
11 excessive duration of the [dog] bite and improper encouragement of a continuation of the attack
12 by officers could constitute excessive force that would be a constitutional violation." *Watkins v.
13 City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998). The law is clear that, when an
14 arrestee has surrendered and is rendered helpless, "any reasonable officer would know that a
15 continued use of the weapon or a refusal without cause to alleviate its harmful effects constitutes
16 excessive force." *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000).

17  Here, taking the facts in the light most favorable to Mr. Theiss, Deputy Fortney's
18 command to Bruno to attack Mr. Theiss after Mr. Theiss had complied with the deputy's
19 direction to raise his hands and had, in so doing, surrendered, was an application of force that a
20 reasonable officer would know was excessive. The law is clearly established that Deputy
21 Fortney's encouragement of the attack at that point was excessive force. Fortney is not entitled
22 to qualified immunity. Summary judgment on plaintiff's unlawful seizure claim is therefore
23 **DENIED**.

C.     **Negligent infliction of emotional distress**

Defendants argue that Mr. Theiss cannot establish a claim a claim for negligence because he cannot identify any duty that was breached, or show any injury that was not caused by his own actions. Dkt. 19 at 18-19. They further argue that Mr. Theiss has not produced any medical evidence of emotional distress. Dkt. 26 at 6. Mr. Theiss does not respond to the argument relating to negligence, but asserts that he has provided evidence of bodily harm and has thus met his burden of showing injury. Dkt. 22 at 13.

Under Washington law, a plaintiff may recover for negligent infliction of emotional distress if he "proves negligence, that is, duty, breach of the standard of care, proximate cause, and damage, and proves the additional requirement of objective symptomatology." *Strong v. Terrell*, 147 Wash. App. 376, 387, 195 P.3d 977 (2008). To satisfy the symptomatology requirement, "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 136 Wash.2d 122, 135, 960 P.2d 424 (1998). "[N]ightmares, sleep disorders, intrusive memories, fear, and anger may be sufficient. However, in order for these symptoms to satisfy the objective symptomology requirement, they must constitute a diagnosable emotional disorder." *Id.*

Mr. Theiss cites to *Kloepfel v. Bokor*, 149 Wash. 2d 192, 66 P.3d 630 (2003), as support for his proposition that he need only prove bodily harm in support of his negligent infliction of emotional distress claim. Dkt. 22 at 13. In that case, the Washington State Supreme Court held that there is no objective symptomatology requirement for claims of intentional infliction of emotional distress. *Kloepfel*, 149 Wash. 2d at 198, 203. The court stated, "Many states, including this one, have distinguished negligent infliction of emotional distress from intentional infliction of emotional distress by making bodily harm or objective symptomatology a

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16

requirement of negligent but not intentional infliction of emotional distress." *Id.* at 198 (citing 4 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts* § 16:17, at 1076 (1987)). The court focused on the importance of limiting liability for merely negligent acts, finding that these reasons did not apply to liability for intentional acts. *Id.* at 199-200. Mr. Theiss's reading of this case is far too broad. The quoted language, which is dicta and not a holding, is a general statement of the law, citing to a reference book and referring to "many states," not a repudiation of Washington's long-standing requirement. Rather than remove the objective symptomatology requirement, the discussion in *Kloepfel* reinforced its importance in the negligence context.

Mr. Theiss also focuses on language from that case stating that a plaintiff's emotional distress must "'constitute a diagnosable medical disorder,'" *Id.* at 197 (quoting *Hegel*, 136 Wash.2d at 135), and points out that the court does not require "that plaintiff have been diagnosed already with a disorder." Dkt. 22 at 13. But Mr. Theiss selectively quotes from the case, ignoring the statement on the same page that "a plaintiff must prove he has suffered emotional distress by 'objective symptomatology,' and the 'emotional distress must be susceptible to medical diagnosis and proved through medical evidence.'" *Kloepfel*, 149 Wash. 2d at 197 (quoting *Hegel*, 136 Wash.2d at 135).

Mr. Theiss has submitted a declaration stating that he has had or currently has nightmares, night sweats, anxiety, panic attacks, fear of his own dog, anger, and helplessness. Dkt. 24 at 5-6. He also declares that has been unable to see a counselor because he has no insurance, but if he had insurance, he would have sought counseling a long time ago. *Id.* at 6. The only person he has spoken to about his feelings about the bite is his father. *Id.* at 6-7. Mr. Theiss states that his father has told him that since the bite, Mr. Theiss "space[s] out" when his

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17

1  father talks to him. *Id.* at 7. Mr. Thiess has submitted no medical evidence of his emotional
2  symptoms.

3        In essence, Mr. Theiss asks the Court to conjecture that his symptoms rise to the level of
4  a diagnosable medical impairment, with no medical evidence to support this claim. This the
5  Court cannot do. Summary judgment on plaintiff's claim of negligent infliction of emotional
6  distress is **GRANTED**.

7        **CONCLUSION**

8        In conclusion, the Court **GRANTS** in part and **DENIES** in part defendants' motion for
9  summary judgment (Dkt. 11). Defendants' motion is **GRANTED** with respect to plaintiff's
10 claims for municipal liability, intentional torts, false arrest, violation of the Washington State
11 Constitution, violation of the equal protection and due process clauses of the Fourteenth
12 Amendment, and negligent infliction of emotional distress. The claims, and defendant County of
13 Snohomish, are **DISMISSED** with prejudice. Defendants' motion is **DENIED** with respect to
14 plaintiff's claim of unlawful seizure and excessive force under the Fourth Amendment.

15       DATED this 28th day of May, 2013.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge